# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SHARYN R. NESBITT,

     Plaintiff,

vs.                                                                      **No. CIV 10cv330 RB/LAM**

LOUISIANA ENERGY SERVICES, LLC;
STEVE MILTENBERGER,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u><br><u>DISMISSING COMPLAINT</u>

**THIS MATTER** comes before the Court on pro se Plaintiff Sharyn R. Nesbitt's application to proceed *in forma pauperis* ("IFP"), filed April 9, 2010, *see* Doc. 2; and on the Court's concomitant obligation "to review the affidavit and screen her case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). The Court must dismiss the action "at any time if the court determines that" the plaintiff is, in fact, able to pay the filing fees and her "allegation of poverty is untrue," § 1915(e)(2)(A), or if the complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii). *See Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

A party applying to proceed IFP must show that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must

show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312.

In screening the complaint, the Court resolves the issue whether the complaint states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under FED. R. CIV. P. 12(b)(6).  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).  This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level.  In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").  The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10.  Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

> Complaints in § 1983 actions subject to qualified-or-absolute immunity defenses must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time.  This requires enough allegations to give the defendants notice of the theory under which their claim is made.
> * * * *

2

> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation.  Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Id.* at 1249 (internal quotation marks and citations omitted).  Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro-se plaintiff.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Section 1915(e)(2) "rationally advances the legitimate goal of removing meritless cases from the federal dockets by allowing the courts to review *sua sponte* claims that are particularly likely to lack merit, since indigent litigants have less financial incentive than do paying litigants to screen their potential claims."  *Curley v. Perry*, 246 F.3d 1278, 1285 (10th Cir. 2001).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The court should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them.  *Id.* at 1951.  Then it "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949.

3

**I.  Nesbitt has failed to establish indigency.**

The Court has carefully reviewed Nesbitt's financial affidavit and her Complaint.  The Court first notes that Nesbitt's application is inconsistent with a finding of poverty.  Nesbitt has no dependents and her car is paid off.  Although self-employed as a contractor doing computer-assisted design ("CAD") work, Nesbitt states she had no income from that business for the past month.  *See* Doc. 2 at 2.  She reports an income of $750/month from one rental unit she owns and nothing from another rental unit she owns.  *See id.* at 3.  She reports $920/month in expenses for mortgage and utilities, and her other expenses are payment of $100/month towards a $2000 credit-card bill.  *See id.*  But Nesbitt reports having $900 in the bank, so she apparently has either received income from the other rental unit before or has received income from some other source that is not apparent from her affidavit.  On this record, the Court will not make a finding of indigency without making further inquiry into Nesbitt's assets.

More importantly, however, as discussed below, the Court also notes that Nesbitt has not stated sufficient facts to state a cognizable claim under any federal statute, so the Court will dismiss her Complaint.

**II.  Nesbitt fails to state a cognizable federal claim.**

Nesbitt is suing Louisiana Energy Services, LLC ("LES"), a New Mexico corporation, and Steve Miltenberger, its Design Manager (who was her group supervisor), for violation of Title VII of the Civil Rights Act of 1964 on the basis of alleged employment discrimination/hostile work environment because of her gender and for retaliation.  *See* Complaint at 1.  She also purports to bring her claims under 42 U.S.C. § § 1981, 1983, 1985, and 1988.  *See id.* at 1-2.  In addition, Nesbitt  brings state-law claims for wrongful termination and for breach of the covenant of good faith and fair dealing.  *See id.* at 8-9.

As set forth in her Complaint, Nesbitt worked for LES from May 2008 until February 2009 as a "contractor" employed as a "CAD Operator."  *See id.* at 3.  She had been placed at LES as a "contract employee" by Empyrean Services, a "staff augmentation company."  *Id.*  She complains that, in July 2008, a co-employee used profanity and yelled at her, and states that, when she reported it to her immediate supervisor, he did nothing except reprimand her for reporting the incident.  *See id.*  Her immediate supervisor also told her that Miltenberger stated that there would not be much CAD work to do in the future, so she could quit if she wanted to.  *Id.* at 3-4.  Nesbitt received a good evaluation in July 2008.  She alleges that, after she was moved into a different work trailer with Miltenberger, Veronica Balencia, who was Miltenberger's design-manager coordinator, falsely accused Nesbitt of taking things off of Balencia's desk.  *Id.* at 4.  Although she states that Balencia acted "cold" and "dismissive" toward her, the two of them planned a trip together for the Christmas holidays.  *Id.*

Nesbitt received a good evaluation in October 2008.  *See id.* at 6.  When, in December 2008, Balencia failed to include Nesbitt in interoffice communications about matters that Nesbitt believed she should know about, Nesbitt complained to Balencia, to Nesbitt's immediate supervisor, and ultimately to Miltenberger, but Miltenberger refused to "make comment or take any corrective action."  *Id.* at 4-5.  Nesbitt then unilaterally canceled the vacation reservations that she and Balencia had made and obtained a refund of their joint deposit.  *See id.* at 5.  She gave Balencia her part of the deposit refund a week later.  *See id.*  She then formally complained to LES's human-resources department, stating her "belief" that Balencia's actions were "directed at her because she was a female" and stating that she was "afraid" of Balencia and that Miltenberger would not talk to her.  *Id.*  The human-resources employee told her that her complaint was "petty", but that he would "speak to Mr. Miltenberger because he was supposed to have communication with" Nesbitt.  *Id.*

5

Nesbitt later met with her immediate supervisor and the human-resources employee to talk about Balencia.  *See id.* at 6.

   Later that month, Empyrean informed Nesbitt that it had received a complaint that she was not getting her work done on time.  *See id.*  After that point, "at times" Miltenberger "ignored and avoided" her.  *Id.*  In February 2009, Nesbitt received a poor evaluation from her immediate supervisor that stated she did not have the experience necessary to do her job and that she needed "to understand how an organization operates and who to bring her technical concerns to."  *Id.*  She was terminated a week later.  *See id.*

   Nesbitt filed an administrative complaint with the EEOC, which dismissed the complaint for lack of jurisdiction because she was not LES's employee.  *See id.* at 2-3, and Ex. A.

   The critical prima facie inquiry in all Title VII discrimination cases is whether the plaintiff has alleged facts showing that an adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination."  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  "As the very name 'prima facie case' suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996) (internal quotation marks omitted).  Notwithstanding the fact that Nesbitt attached documents indicating that LES was not her "employer" as defined by Title VII and that her Complaint does not allege facts to show that LES was her employer, none of her allegations suggest that any of her supervisors at LES harbored any discriminatory animus against her because of her gender.  The only person that Nesbitt speculates did not like women was Balencia, who herself is a woman, and who was not Nesbitt's supervisor. Nesbitt has failed to state a claim under Title VII for employment discrimination because no facts show "circumstances which give

rise to an inference of unlawful discrimination."  *Burdine*, 450 U.S. at 253 .

Nor has Nesbitt stated a claim for retaliation in violation of Title VII.   Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter.

42 U.S.C. § 2000e-3(a).  Nesbitt speculates that her supervisors may have retaliated against her for complaining about her co-employee's use of bad language and for yelling at her, or because she cancelled her trip reservations with Balencia.  But neither of these actions may be considered as opposition to "unlawful employment practices."   Nesbitt has not stated a claim for retaliation in violation of Title VII.

Further, Nesbitt cannot state a claim under §§ 1981, 1983, 1985, or 1988.  Section 1981 applies only to claims of racial discrimination; it "does not apply to sex or religious discrimination." *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979).  Nesbitt has alleged no facts related to alleged racial discrimination, thus she cannot state a viable claim under § 1981.

Section 1985 prohibits conspiracies to interfere (i) with the performance of duties by federal officers, see § 1985(1); (ii) with the administration of federal or state courts, § 1985(2); (iii) "for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection under the laws," 1985(3), first clause; (iv) with the duties of a state officer, *see* § 1985(3), second clause; and (v) with the right to support candidates in a federal election, *see* § 1985(3), third clause. *See generally United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 839 n. 1 (1983) (Blackmun, J., dissenting).  Based on the allegations in her Complaint, the only plausible basis for Nesbitt's § 1985 claim is the category of conduct addressed by the first clause of § 1985(3).

But to state a claim for a private conspiracy under this clause, Nesbitt must allege, *inter alia*, that the conspiracy was: (1) motivated by a class-based invidiously discriminatory animus; and (2) "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (internal quotation marks omitted). In *Bray*, the Supreme Court recognized only two rights that are protected against private action under § 1985(3): "the Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel." *Id.* at 278 (internal citation omitted). Because Nesbitt's Complaint does not allege that the Defendants encroached either of these rights, she has failed to state a claim against them under § 1985.

"Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting 'under color of state law.'" *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995); *see Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). Nesbitt's allegations of unconstitutional conduct are alleged against a private corporation and a private individual, and no facts associate their acts with actions taken by the state. Therefore, Nesbitt has failed to state a cognizable claim for relief under § 1983.

42 U.S.C. § 1988(b) simply provides for an award of attorney fees to the prevailing party in "any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . .[and] title VI of the Civil Rights Act of 1964." Because Nesbitt has failed to state a claim under any of the referenced statutes, she cannot state a claim for attorney fees under § 1988.

**III.  Nesbitt has failed to state a claim for wrongful termination or for breach of contract under state law.**

8

Because Nesbitt is a citizen of Arizona and the Defendants are citizens of New Mexico, it is possible that the Court has subject-matter jurisdiction over her case under 28 U.S.C. § 1332 (the diversity statute) if Nesbitt can state a claim for violation of state law.  As mentioned, *supra*, Nesbitt states that she was a "contract employee" and "contractor" for LES, placed there by Empyrean, Complaint at 3, and that her performance evaluations went to Empyrean, *id.* at 5.  Nowhere does Nesbitt allege that she signed or had an employment contract with LES, and the Court will not supply allegations for her.  *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) ("This court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  We have on several occasions dismissed pro se complaints for failure to allege sufficient facts."), *cert. denied*, No. 09-549, 130 S. Ct. 1142 (Jan 19, 2010).

Nesbitt alleges "wrongful termination" "in violation of Federal New Mexico law," citing the basis as "Balencia's dislike for other female employees."  Complaint at 9.  But there is no "federal New Mexico law" regarding wrongful termination apart from federal statutory law that applies in New Mexico.  She also alleges violation of an "implie[d] covenant of good faith and fair dealing" contained in an unspecified "employment contract," again contending that the Defendants' bad-faith conduct was "treating [her] differently than [] male employees." *Id.*  Insofar as Nesbitt is attempting to state a violation of New Mexico common law for breach of contract, her claims must fail because she has not alleged that she had an employment contract with LES.  Her Complaint indicates that her employment contract was with Empyrean.

In New Mexico,

Employment without a definite term is presumed to be at will.  In an at-will employment relationship, both the employer and the employee have the right to terminate the employment relationship at any time and for any reason.  Our courts

have recognized two exceptions to the at-will employment rule: (1) wrongful termination under facts disclosing unlawful retaliatory discharge or (2) where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge.   The parties may modify the at-will presumption by a contractual agreement regarding termination.

*Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 131 N.M. 607, 615, 41 P.3d 333, 341 (2001) (internal

quotation marks and citations omitted).  Because, as noted, *supra*, Nesbitt's Complaint does not

allege sufficient facts either to show an "unlawful retaliatory discharge" or an employment contract

between Nesbitt and LES, Nesbitt cannot state a claim for either wrongful termination or for breach

of an implied contract of good faith and fair dealing.

The Court will dismiss Nesbitt's Complaint without prejudice.  If she chooses to refile an

application to proceed IFP with more information about her financial status (such as her income for

previous months from her self-employment and whether her unrented rental unit has now been

rented and if not, why not), she must also amend her Complaint to rectify the deficiencies noted

above.  *See Brown v. Beck*, No. 06-4088, 203 Fed. Appx. 907, 910-11(10th Cir. Aug. 1, 2006)

(unpublished) ("[D]ismissal without prejudice is not an extreme sanction because the remedy is

simply to cure the defect and refile the complaint. Thus, [a plaintiff who has been denied permission

to proceed IFP] can initiate a new action by refiling his complaint and either paying the full filing

fee at the start of the litigation or successfully applying to proceed IFP and then complying with the

district court's fee orders.").

**NOW, THEREFORE, IT IS ORDERED** that Nesbitt's motion to proceed IFP (Doc. 2) is

DENIED, and that her Complaint is dismissed without prejudice.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE

10